# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DONALD DIEDERICH,                                    Civil Action No. 1:05-cv-017
     Petitioner,

                                      Spiegel, J.
     vs.                                             Hogan, M.J.

CARL S. ANDERSON, WARDEN,                            **REPORT AND**
     Respondent.                                     **RECOMMENDATION**

       Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court upon the petition (Doc. 1), respondent's return of writ and exhibits thereto (Doc. 3), and petitioner's traverse. (Doc. 9).

## I. Facts

       This case involves the following facts, as summarized by the parties in their briefs to the First District Court of Appeals.[1]  (Doc. 3, Exh. 5, Brief of Appellant, pp. 1-3; Exh. 6, Brief of Appellee, pp. 3-4).  Petitioner was accused of aiding and abetting the sale of approximately fifty pounds of marijuana to a confidential informant nicknamed "Main Flo." (T.p. 145-46, 444).  A tip from the confidential informant led Hamilton County RENU officer Jeff Voelker ("Officer Voelker") to arrange a series of taped phone conversation between his informant and petitioner along with co-defendant, Thomas McWilliams ("McWilliams"), regarding the sale of marijuana. (T.p. 187, 198-199).  The phone calls outline a deal allegedly made between the informant, the

---

[1]     The Hamilton County Court of Appeals did not set forth the facts of this case, except to describe the factual basis of petitioner's conviction as follows: "The evidence showed that Diederich 'set up' the marijuana sale and then let another finish it." *State v. Diederich* (May 28, 2003), Hamilton App. No. C-020042, unreported. (Doc. 3, Exh. 7 at 4).

buyer, and petitioner and McWilliams, the sellers, arranging the sale of forty-eight to fifty pounds of marijuana for $700 per pound. (T.p. 204-244).  The phone conversations were authenticated by Officer Voelker. (T.p. 206-240).

The drug deal took place in the parking lot of The Chili Company restaurant at West Eighth and Linn streets in Cincinnati. (T.p. 248).  Ten to fifteen police officers were present to conduct surveillance and maintain a safe environment. (T.p. 247).  The transaction was monitored via transmitter. (T.p. 248).  The informant and an undercover police officer arrived at the restaurant and parked next to McWilliams, who was there waiting. (T.p. 245, 249-250). McWilliams exited his vehicle and got into the back seat of the informant's car. (T.p. 250).  The undercover officer told McWilliams he wanted to see the marijuana before he parted with the money and McWilliams gave the officer the keys to his car. (T.p. 250, 251).  Inside the trunk was a black duffel bag containing more than 21,000 grams of marijuana. (T.p. 243, 251).

In a post-arrest interview McWilliams revealed the location of more marijuana. (T.p. 265).  He took Officer Voelker, along with Covington police officers and FBI agents, to a Covington, Kentucky, location where they recovered 417 pounds of marijuana stacked in a bedroom closet. (T.p. 266, 388, 470).  McWilliams testified that the marijuana held in the apartment was brought to its Covington, Kentucky location by McWilliams and a few drug "King Pins." (T.p. 448, 503-508).  McWilliams testified that the marijuana involved did not belong to petitioner. (T.p. 506).  Also during his interview McWilliams received a phone call from petitioner, which was monitored and recorded by police, in which the two discuss the deal with the informant, petitioner's location in Omaha, and the transportation of two-to three hundred pounds of marijuana from Covington to Omaha. (T.p. 269-270, 291).  Based upon all of

the above, Officer Voelker issued a warrant for petitioner's arrest. (T.p. 279).  Petitioner was arrested at an airport in Omaha, Nebraska. (T.p. 279).

In a post-arrest interview, petitioner told police that he had been in Louisville, Kentucky, visiting a friend when Kevin Sauter ("Kevin") called him from Covington, Kentucky. (T.p. 284). Kevin told petitioner that McWilliams wanted help distributing marijuana. (T.p. 284).  Petitioner arranged for Kevin to pick him up in Louisville and take him to Covington, where he agreed to help McWilliams sell the drugs. (T.p. 285).  Petitioner was acquainted with the informant and left a cell phone number on the informant's pager. (T.p. 286).  Petitioner told police that he set the deal up between the informant and McWilliams and planned to let McWilliams finish the deal. (T.p. 288).  Petitioner also indicated that the informant had ordered forty to fifty pounds of marijuana from him. (T.p. 288).

At trial, McWilliams testified that petitioner set the deal up with the informant before leaving for Omaha. (T.p. 473-479, 483, 511).  Petitioner told McWilliams that a "shady character" would pick up around fifty pounds of marijuana at $700 per pound. (T.p. 475, 497). McWilliams owed a debt from a prior drug transaction and felt pressured to complete the deal with the informant despite his misgivings. (T.p. 513-15).  Petitioner told McWilliams that if he completed the deal with the informant "it would be safe, everything would be fine." (T.p. 514).

## II.  Procedural History

Petitioner was indicted by the Hamilton County Grand Jury in 2000 on one count of trafficking in marijuana in an amount that equated or exceeded 20,000 grams in violation of Ohio Rev. Code § 2925.03(A). (Doc. 3, Exh. 1).  Prior to trial, petitioner pled guilty but was subsequently granted a motion to withdraw his guilty plea.  Petitioner was tried by a jury and

found guilty as charged in the indictment. (Doc. 3, Exh. 2).  On January 8, 2002, the trial court

sentenced petitioner to serve a term of eight years incarceration. (Doc. 3, Exh. 3).

      Represented by new counsel, petitioner filed a timely appeal of his conviction and

sentence raising the following assignments of error:

    1.  The trial court erred in qualifying an expert witness.

    2.  The trial court erred allowing testimony of prior acts.

    3.  The trial court erred in failing to instruct the jury on abandonment.

    4.  Trial counsel was ineffective.

    5.  The conviction was against the manifest weight of the evidence.

    6.  The conviction was based on insufficient evidence.

(Doc. 3, Exh. 5).  On May 28, 2003, the First District Court of Appeals issued an opinion

affirming the trial court's judgment and overruling petitioner's assignments of error. (Doc. 3,

Exh. 7).

      Petitioner, pro se, timely appealed to the Supreme Court of Ohio raising the same issues

on appeal. (Doc. 3, Exhs. 8, 9).   On September 10, 2003, the Supreme Court of Ohio declined

jurisdiction to hear the case and dismissed the appeal as not involving any substantial

constitutional question. (Doc. 3, Exh. 11).

      In the interim, on August 28, 2003, petitioner filed a pro se application to reopen his

direct appeal pursuant to Rule 26(B), Ohio Rules of Appellate Procedure, presenting a claim of

ineffective assistance of appellate counsel. (Doc. 3, Exh. 12)  On January 22, 2004, the Ohio

Court of Appeals denied the application to reopen on the basis of res judicata, finding that each

of the challenges raised by petitioner in his application to reopen the appeal presented a matter

4

that could have been raised in his direct appeal to the Supreme Court of Ohio. (Doc. 3, Exh. 15).

Petitioner timely appealed to the Supreme Court of Ohio, which dismissed the appeal as not

involving any substantial constitutional questions. (Doc. 3, Exh. 18).

On January 10, 2005, petitioner filed a Petition for Writ of Habeas Corpus in this Court

raising the following grounds for relief:

> **Ground One**: PETITIONER WAS DENIED DUE PROCESS OF LAW, WHEN
> THE TRIAL COURT FOUND HIM GUILTY OF TRAFFICKING IN
> MARIJUANA, IN VIOLATION OF THE FOURTEENTH AMENDMENT TO
> THE UNITED STATES CONSTITUTION.
>
> THE STATE TRIAL COURT PREJUDICED PETITIONER WHEN IT FAILED
> TO GRANT DEFENSE COUNSEL'S MOTION FOR MISTRIAL, WHERE
> WITNESSES ARE ALLOWED TO TESTIFY TO NUMEROUS PRIOR ACTS
> OF THE PETITIONER WHERE SUCH ACTS ARE NOT PROBATIVE OF
> ANY RELEVANT FACT AND HAVE AN OBVIOUS PREJUDICIAL EFFECT.
>
> THE STATE TRIAL COURT PREJUDICED PETITIONER FROM ENJOYING
> A FAIR TRIAL, WHEN IT ADMITS, OVER TIMELY OBJECTION
> NUMEROUS PIECES OF TESTIMONY AND EVIDENCE WHICH ARE
> PROBATIVE OF PRIOR BAD ACTS OF THE PETITIONER AND THE ONLY
> POSSIBLE USE FOR SUCH EVIDENCE IS TO SHOW THAT THE
> PETITIONER ACTED IN CONFORMITY THEREWITH.
>
> **Ground Two**: PETITIONER WAS DENIED DUE PROCESS OF LAW, WHEN
> A TRIAL COURT IMPROPERLY QUALIFIES THE INVESTIGATING
> OFFICER IN A CRIMINAL CASE AS AN EXPERT WITNESS WHERE
> THERE IS NO SHOWING THAT HIS EXPERTISE IS VALID UNDER OHIO
> LAW.
>
> PETITIONER WAS DENIED DUE PROCESS OF LAW, WHERE A TRIAL
> COURT ADMITS EXPERT TESTIMONY FROM A WITNESS THAT WAS
> NOT QUALIFIED TO TESTIFY AS SUCH.
>
>
> **Ground Three**: THE TRIAL COURT'S DECISION WAS AGAINST THE
> MANIFEST WEIGHT OF THE EVIDENCE.
>
> THE TRIAL COURT'S DECISION IS IN ERROR IN THAT IT WAS NOT
> SUPPORTED BY A SUFFICIENCY OF THE EVIDENCE.

IT WAS PLAIN ERROR FOR THE TRIAL COURT NOT TO INCLUDE AN INSTRUCTION FOR ABANDONMENT.

DEFENSE TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE ISSUE OF ABANDONMENT FOR INCLUSION IN THE INSTRUCTION TO THE JURY, WHERE SUFFICIENT FACTS OBTAINED TO SUPPORT THE DEFENSE.

**Ground Four**: A PETITIONER IS DENIED THE STATE AND FEDERAL CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL WHEN APPELLATE COUNSEL FAILS TO RAISE REVERSIBLE ERROR UPON THE DIRECT APPEAL, AND THE LOWER APPELLATE COURT REFUSES TO PERMIT REOPENING UPON A TIMELY FILED APPLICATION FOR REOPENING.

APPELLATE COUNSEL FAILED TO RAISE THE LACK OF THE ABANDONMENT INSTRUCTION, PROSECUTORIAL MISCONDUCT, INADMISSIBLE EVIDENCE AND INSUFFICIENT EVIDENCE AND MANIFEST WEIGHT OF THE EVIDENCE.

(Doc. 1 at 9-24).


## III. Standard of Review

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim

6

adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts.  The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case.  The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief.  *See Williams v. Taylor*, 529 U.S. 362 (2000).

**IV.  Ground One of the petition is without merit.**

Petitioner's first ground for relief asserts that the trial court violated his due process rights when it failed to grant a mistrial where witnesses testified about "prior acts of the petitioner where such acts are not probative of any relevant fact and have an obvious prejudicial effect" and when it admitted into evidence testimony of "prior bad acts of the petitioner and the only possible use for such evidence is to show that petitioner acted in conformity therewith."

7

(Doc. 1 at 9).

Petitioner argues that the trial court allowed the admission of evidence having no relevance to the issue of whether he aided and abetted the drug transaction on October 14, 2000. This included evidence of a search yielding 400 pounds of marijuana found in an apartment outside the State of Ohio and rented by someone other than petitioner, and brought there by individuals other than petitioner. (Doc. 1 at 11 and citations therein).  The trial court also allowed petitioner's co-defendant McWilliams to testify that he and petitioner had engaged in drug trafficking before, and to testify upon many of his other drug related exploits. *Id.*

In addressing the merits of petitioner's claim, the First District Court of Appeals, the last state court to issue a reasoned opinion on the claim, found the following:

> Defendant-appellant Donald Diederich was found guilty by a jury of trafficking in marijuana in an amount equal to or exceeding 20,000 grams, in violation of R.C. 2925.03(A). His first and second assignments of error allege that the trial court erred in admitting evidence of Diederich's prior "bad acts," and in failing to grant Diederich's motion for a mistrial based upon the admission of the "bad acts" evidence.

> Evid. R. 404(B) prohibits the admission of evidence of other crimes, wrongs or acts to prove the character of the defendant to show that he acted in conformity with his criminal past. However, such evidence is admissible pursuant to Evid. R. 404(B) and R.C. 2945.59 to prove the defendant's scheme, plan or system in committing the crime.

> "The 'scheme, plan or system' provision contained within R.C. 2945.59 permits the introduction in evidence of testimony concerning other acts which form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment." *State v. Wilkerson* (1980), 64 Ohio St.2d 308, 415 N.E.2d 261, paragraph two of the syllabus. Where the defendant's plan or scheme is in issue, evidence that forms the background of the charged crime may be used to provide the context in which the crime occurred. See id.; *State v. Hill* (1987) 37 Ohio App.3d 72, 523 N.E. 2d 894. Permissible purposes for the use of "other acts" evidence include using the evidence to show that the defendant was involved in a drug-dealing operation. See *State v. Dominguez* (Jan. 29, 1999), 1st Dist. No. C-980148.

The evidence of Diederich's involvement in drug activity was not used to show his conforming character. The evidence was properly introduced to show the circumstances surrounding the crime and the relationship of the individuals involved. See *State v. White* (June 25, 1997), 1st Dist. No. C-960506. "The evidence gave the jury a complete picture of what had occurred." See id. The jury must know the full background and setting of the case because it cannot be expected to make its decision in a void, without knowledge of the circumstances of the acts that form the basis of the charged crime. See *State v. Wilkinson*, supra; *State v. Duncan* (1998); 130 Ohio App.3d 77, 719 N.E.2d 608; *State v. Scott* (June 25, 1997), 1st Dist. No. C-960557.

The evidence in the instant case was not introduced to show Diederich's propensity to deal drugs. The evidence was introduced to give the jury an understanding of the background of the crime and the relationships between Diederich and the other individuals involved. We hold that the trial court did not err in admitting the evidence or in denying Diederich's motion for a mistrial. The first and second assignments of error are overruled.

(Doc. 3, Exh. 7 at 1-3).

Petitioner has failed to show that the state court of appeals' decision is contrary to, or an unreasonable application of, clearly established federal law. "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 543 U.S. 892 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991). *See also Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (stating in reference to habeas corpus challenge to admission of other-acts evidence that "[s]tate court evidentiary rulings do not rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (internal quotation marks and citations omitted); *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), *cert. denied*, 532 U.S.

9

989 (2001) ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.") (internal quotation marks and citation omitted). With respect to the admission of prior bad acts evidence, the Sixth Circuit has found that there is no clearly established United States Supreme Court precedent holding that the admission of such evidence violates the Due Process Clause:

> There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5, 112 S.Ct. 475. Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64, 87 S.Ct. 648. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564, 87 S.Ct. 648. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell*, 329 F.3d 496, 512-513 (6th Cir. 2003). Thus, even if the prior acts evidence to which petitioner objects was improperly admitted by the trial court, there is no clearly established Supreme Court precedent which holds that the admission of such propensity evidence violates the Due Process Clause. "The Supreme Court has not made a contrary ruling since *Bugh* and the holding that there is no 'clearly established' due process right against the use of propensity evidence is binding in this Circuit until either the Supreme Court or Sixth Circuit

says otherwise." *Sifuentes v. Prelesnik*, 2006 WL 2347529, *1 (W.D. Mich. Aug. 11, 2006).

In addition, even if petitioner states a cognizable claim, he is not entitled to relief in this case. The Ohio Court of Appeals upheld the trial court's determination that the disputed evidence was properly admitted not to show petitioner's propensity to deal drugs, but rather to give the jury an understanding of the background of the crime and the relationships between petitioner and the other individuals involved. The state appellate court determined that the jury was entitled to understand the context in which the crime occurred, including the full background and setting of the case so as not to make its decision in a void. (Doc. 3, Exh. 7 at 1-3). The disputed evidence was properly admitted under Ohio law to show petitioner's scheme, plan or system in committing the crime. Petitioner has not shown that the admission of the prior acts evidence rendered his trial fundamentally unfair. The Ohio Court of Appeals' decision is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Petitioner is thus not entitled to habeas relief on this claim.

**V.  Ground Two of the petition is without merit.**

In Ground Two of the petition, petitioner contends his due process rights were violated when the trial court improperly qualified Officer Voelker, the investigating officer in the case, as an expert witness and then admitted his testimony. Voelker testified about the manner in which the drug trade operates and interpreted the language used in the telephone conversations admitted at trial. Petitioner contends that Voelker's testimony was not necessary as such, because the other witnesses in the case provided much of the same information from personal knowledge. (Doc. 1 at 12-13).

In addressing this claim, the First District Court of Appeals stated:

> Diederich's third and fourth assignments of error, which allege that the trial court erred in qualifying the investigating officer as an expert witness and in permitting the officer to testify about the structure of drug-trafficking organizations, are overruled. "A qualified police officer may testify as to the general practices of drug traffickers to demonstrate that the defendant's conduct was consistent with those practices or customs." *State v. Mejia* (Dec. 8, 2000), 1st Dist. No. C-000255; see *State v. Armstrong* (June 10, 1992), 1st Dist. No. C-910637; *State v. Wood* (Apr. 29, 1992), 1st Dist. No. C-910529. We hold that the trial court did not err in qualifying the police officer as an expert witness and permitting the officer to testify as to the behavior, slang and general practices of drug traffickers. See *State v. Poole*, 8th Dist. No. 80250, 2002-Ohio-5326.

(Doc. 3, Exh. 7 at 3).

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Buell,* 274 F.3d at 357. The Court "must defer to a state court's interpretation of its own rules of evidence and procedure" when assessing a habeas petition. *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005). Habeas courts do not review questions of state evidentiary law unless they give rise to a fundamentally unfair trial. *Estelle*, 502 U.S. at 69-70; *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003). "The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief unless the evidence violates due process or some other federal constitutional right." *Randolph v. Wolfenbarger*, 2006 WL 1662885, *5-*6 (E.D. Mich. 2006), citing *Keller v. Larkins*, 251 F.3d 408, 419 (3rd Cir. 2001). Likewise, the decision to qualify an individual as an expert witness involves only a state law evidentiary issue. *Randolph v. Wolfenbarger*, 2006 WL 1662885, *5-*6, citing *United States ex. rel. Ruddock v. Briley*, 216 F. Supp.2d 737, 743 (N.D. Ill. 2002); *Vaquez-Torrez v. Dorsey*, 66 F.3d 339, 1995 WL 539575, *1 (10th Cir. 1995). Therefore, even if Officer Voelker's testimony

12

was incorrectly admitted, this is the type of state law error in an evidentiary ruling which is not cognizable on habeas review.

Moreover, even if this claim is cognizable, petitioner has not shown that the admission of the disputed testimony from Officer Voelker rendered his trial fundamentally unfair. Petitioner admits that the other witnesses provided the same information on the drug trade and the slang used. Thus, Officer Voelker's characterizations added nothing that the jury did not already know and the admission of such evidence, if in error, was harmless and did not unfairly prejudice petitioner. Accordingly, Ground Two of the petition should be denied.

**VI. Ground Three of the petition is without merit.**

Ground Three of the petition asserts four claims: (1) the trial court's decision was against the manifest weight of the evidence; (2) the conviction was not supported by sufficient evidence; (3) the trial court erred by not instructing the jury on the issue of abandonment; and (4) trial counsel was ineffective in failing to request an instruction on abandonment.

To the extent petitioner claims his conviction was against the manifest weight of the evidence, this is a state law claim which this Court may not consider on habeas corpus review. 28 U.S.C. § 2254(a); Pulley v. Harris, 465 U.S. 37, 41 (1984). The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence

introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to  review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31 (1982).  Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his conviction was  against the manifest weight of the evidence cannot be considered by this Court. Therefore, this claim should be dismissed as non-cognizable.

Petitioner also contends his conviction was not based on sufficient evidence.  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316  (1979); *In re Winship,* 397 U.S. 358, 364 (1970).  In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.  On habeas corpus

review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.* In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002). Therefore, the question for this Court is whether the Ohio Court of Appeals' application of the "no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v. Jenks*, 61 Ohio St.3d 259 (1991), was contrary to or an unreasonable application of that test to the facts of this case.

In overruling this assignment of error, the state appellate court hearing petitioner's direct appeal made the following findings regarding his claim of insufficient evidence:

> The fifth and sixth assignments of error, alleging that Diederich's conviction was based upon insufficient evidence and against the manifest weight of the evidence, are overruled. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. We hold that, after viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of trafficking in marijuana had been proven beyond a reasonable doubt. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

(Doc. 8, Exh. 14 at 11-13).

This Court finds that the Ohio Court of Appeals' decision is consistent with *Jackson* and constitutes a reasonable application thereof, as well as a reasonable determination of the facts in light of the evidence. The Court concludes that sufficient evidence was presented from which any rational factfinder could reasonably convict petitioner. The prosecution presented several

recorded telephone conversations between the informant, petitioner and his co-defendant McWilliams arranging the sale of forty-eight to fifty pounds of marijuana for $700.00 per pound. (T.p. 204-244).  After the deal which resulted in McWilliams' arrest, another conversation is recorded in which McWilliams and petitioner discuss the deal with the informant, petitioner's location in Omaha, and the transportation of two to three hundred pounds of marijuana from Covington to Omaha. (T.p. 269-270, 285-291).  There was also evidence that petitioner admitted to police that he set the deal up between the informant and McWilliams and planned to let McWilliams finish the deal. (T.p. 288).  When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's conviction.  Therefore, this claim is without merit and should be denied.

Finally, petitioner argues that the trial court erred by not instructing the jury on the issue of abandonment and that trial counsel was ineffective in failing to request such an instruction. An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle,* 502 U.S. at 72 (quoting *Cupp*, 414 U .S. at 147).  The court must "inquire 'whether there is a reasonable likelihood that the jury has

16

applied the challenged instruction in a way that violates the Constitution.'" *Estelle,* 502 U.S. at 72 (quoting *Boyd v. California*, 494 U.S. 370, 380 (1990)).  The Supreme Court has held that a petitioner seeking habeas corpus relief based upon the omission of a particular instruction carries an "especially heavy" burden because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Ohio Court of Appeals held that the trial court did not err in declining to give an abandonment instruction because the evidence did not support such an instruction:

> Diederich's seventh and eighth assignments of error allege that it was plain error for the trial court to fail to instruct the jury on the defense of abandonment and that the trial counsel was ineffective for failing to request and abandonment instruction.
>
> Once the defendant has exhibited the required intent and has performed an overt act toward the commission of the offense, abandonment is no longer a defense. *State v Cooper* (1977), 52 Ohio St.2d 163, 370 N.E.2d 725. To warrant an instruction on abandonment, there must be evidence that the defendant unequivocally repudiated his criminal intent. See *State v. Jewell* (Nov. 17, 1999), 5th Dist. No. 99CA01.
>
> The evidence showed that Diederich "set up" the marijuana sale and then let another finish it. Defense counsel's theory at trial was that Diederich did not have any part in the drug transaction. Under these circumstances, Diederich was not entitled to an instruction on abandonment. See *State v. Musgrave* (Apr. 24, 2000), 5th Dist. No. 98CA10; *State v. Porter* (Aug. 14, 1995), 5th Dist. No. 1995CA00055. Therefore, the trial court did not err in failing to instruct the jury on abandonment, and the trial counsel was not ineffective for failing to request an abandonment instruction. The seventh and eighth assignments of error are overruled.

(Doc. 3, Exh. 7 at 4).

The record fully supports the Court of Appeals' decision in this regard.  The testimony at trial shows petitioner told Officer Voelker he set up the deal between the informant and McWilliams and planned to let McWilliams finish up the deal:

Q.  Did Diederich talk to you about the phone calls that he made to Main Flo?

A.  Yeah, he mentioned those.

Q.  All right.  Did he talk to you about the nature of his first phone call?

A.  Well, he basically told me that he paged Main Flo to call him at whatever cell number, the cell number that we called.

Q.  Did he–did Diederich tell you how much marijuana Main Flo had ordered?

***

A.  He basically said that he ordered between 40 and 50.

Q.  Okay.  Did he say anything about whether or not he could provide that amount to Main Flo?

A.  Yeah.  He instructed – he told me that he was basically setting up this deal, and he was doing it for McWilliams, and he was going to allow McWilliams to finish it.

***

Q.  And did you talk to him about his discussions, if any, with McWilliams about finishing the deal in his absence?

A.  Yes.

Q.  What did he say?

A.  Basically, he told me that he just told McWilliams, if you want to finish this, here it is, and I want you to finish it.

(T.p. 288-290).  Although petitioner left Cincinnati before the transaction took place,

McWilliams testified that petitioner set up the deal with the informant, Main Flo, before leaving

for Omaha. (Tr. 473-79, 483, 511).  Petitioner told McWilliams that a "shady character" would

pick up around fifty pounds of marijuana at $700 per pound. (T.p. 475, 497).[2]  The evidence does

---

[2]     Petitioner argues that his "co-defendant [McWilliams] testified that Petitioner renounced his involvement in any way previous to leaving Kentucky and told his co-defendant to do likewise" and "that he [petitioner] unequivocally repudiated his criminal intent and instructed the co-defendant to do the same." (Doc. 1 at

not support a finding that petitioner unequivocally repudiated his criminal intent.

In view of the First District's opinion and the evidence of record, the Court finds petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent, or that the trial court's failure to instruct the jury on abandonment so infected the entire trial as to result in a due process violation. For the same reason, trial counsel was not obliged to seek an instruction on abandonment and therefore his performance was not deficient. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Therefore, these claims should be denied.

**VII. Ground Four of the petition is procedurally defaulted and, in the alternative, without merit.**

Ground Four of the petition asserts that appellate counsel was ineffective for failing to raise several claims on direct appeal to the Ohio Court of Appeals. Respondent argues this ground for relief is procedurally defaulted. The Court agrees.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See*

---

14). The Court has reviewed the testimony of Mr. McWilliams, and in particular the citations to transcript pages 513 and 527 cited by petitioner in his appellate brief, and finds that petitioner's characterization of McWilliams' testimony is inaccurate.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review.  *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th  Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).  The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  In determining whether a state court rested

20

its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261.  No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9. *See also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995).  To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new

21

reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324.

In this case, petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim. First, petitioner failed to raise his ineffective assistance of counsel claim with the Supreme Court of Ohio on direct appeal. In Ohio, "[c]laims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution." *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204, 1205 (1992). Since the issue of ineffective assistance of appellate counsel could have been raised on direct appeal to the Supreme Court of Ohio but was not, res judicata barred any further litigation of the claim.

Second, the Ohio Court of Appeals actually enforced the state procedural bar to any further consideration of this claim when it denied petitioner's application to reopen his direct appeal pursuant to Rule 26(B) on the basis of res judicata. (Doc. 3, Exh. 15). Because the Ohio Supreme Court summarily dismissed petitioner's appeal of the denial of his Rule 26(B) application without comment, the Court must presume that the Ohio Supreme Court relied on the procedural default expressly relied upon by the Ohio Court of Appeals. *See Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Third, the procedural bar of res judicata is an adequate and independent state ground upon which the state can rely to foreclose review of petitioner's ineffective assistance of

appellate counsel claim.  "[T]he Supreme Court of Ohio has repeatedly ruled that even having the ability to raise the issue of ineffective assistance of appellate counsel in the supreme court may properly invoke res judicata to bar an App. R. 26(B) application." *State v. Krzywkowski*, 2003 WL 21356731, *1 (Ohio App. 8 Dist.), citing *State v. Terrell*, 72 Ohio St.3d 247, 648 N.E.2d 1353 (1995); *State v. Dehler*, 73 Ohio St.3d 307, 652 N.E.2d 987 (1995); *State v. Colombo*, 73 Ohio St.3d 306, 652 N.E.2d 987 (1995); *State v. Hill*, 78 Ohio St.3d 174, 677 N.E.2d 337 (1997); *State v. Gillard*, 85 Ohio St.3d 363, 708 N.E.2d 708 (1999).  *See also State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); *State v. Cooey*, 99 Ohio St.3d 345, 346, 792 N.E.2d 720, 721 (2003).  In addition, Ohio's doctrine of res judicata is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004); *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001); *Van Hook v. Anderson*, 127 F. Supp.2d 899, 916-917 (S.D. Ohio 2001).  Thus, the first three *Maupin* factors are satisfied.

Because petitioner has procedurally defaulted his ineffective assistance of appellate counsel claim, he has waived such claim for purposes of federal habeas corpus review in the absence of any showing by him of "cause" for his default and actual prejudice as a result of the alleged error, or that failure to consider the claim will result in a "fundamental miscarriage of justice."  *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.  Petitioner has not provided any justification as "cause" for his procedural default, nor has he shown that failure to consider his ineffective assistance of appellate counsel claim will result in a "fundamental miscarriage of justice."  Thus, Ground Four

23

of the petition is waived.

Alternatively, this claim is without merit.  To establish his ineffective assistance of appellate counsel claim, petitioner must demonstrate: (1) his attorney on direct appeal made such serious errors he was not functioning as the "counsel" guaranteed by the Sixth Amendment; and (2) his attorney's deficient performance prejudiced the defense by undermining the reliability of the appeal result.  *See Strickland v. Washington,* 466 U.S. 668, 687 (1984).

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688.  Judicial scrutiny of counsel's performance must be highly deferential, and a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the time of the conduct. *Id.* at 689.  In determining whether or not counsel's performance was deficient, the Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.*

To satisfy the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id*. at 694.  A showing by petitioner that the alleged errors had "some conceivable" effect on the outcome of the proceeding is insufficient to meet this standard. *Id*. at 693.  However, by the same token, petitioner need not demonstrate that his counsel's conduct "more likely than not" altered the outcome of the proceeding to establish prejudice.  *See id.*  Petitioner has met his burden if he shows that the decision reached would "reasonably likely have been different absent the errors." *Id*. at 695.  *See also Willis v. Smith*,

24

351 F.3d 741, 745 (6th Cir. 2003); *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000).

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id*. at 697.

Petitioner asserts that appellate counsel was ineffective in failing to assign as errors (1) the lack of an abandonment instruction; (2) prosecutorial misconduct; (3) the denial of petitioner's right to testify on his own behalf; (4) the admission of prejudicial inadmissible evidence at trial; and (5) insufficient evidence to convict and his conviction was against the manifest weight of the evidence.   This Court notes, as did the Ohio Court of Appeals in ruling on petitioner's Rule 26(B) application, that appellate counsel in fact raised as assignments of error the failure of the trial court to give an instruction on abandonment, the admission of other acts evidence, and the sufficiency of the evidence to convict.  Given the Court's rejection of errors (1), (4), and (5) elsewhere in this opinion, none of these alleged instances of ineffective assistance of appellate counsel compels a grant of habeas relief.

With respect to the remaining errors, petitioner fails to show that counsel's performance was deficient such that he was denied effective assistance of appellate counsel.  In error (2) alleging prosecutorial misconduct,  petitioner asserts the prosecutor misstated the evidence in his opening statement by alleging that petitioner "admitted to everything" when interviewed by Officer Voelker. (Doc. 1 at 19, citing T.p. 153-54).  Petitioner contends that on cross-examination, Officer Voelker admitted that he did not have a signed statement by petitioner or a written confession confirming the facts elicited during his interview with petitioner. (Doc. 1 at

25

19, citing T.p. 300).  Petitioner argues that in the absence of his written statement confirming Officer Voelker's testimony, "there is absolutely no evidence that Petitioner made any statement admitting to anything." (Doc. 1 at 20).  Petitioner is incorrect.  Officer Voelker's testimony of the statements made by petitioner during their interview is admissible evidence, Ohio Evid. R. 801(D)(2), which the jury was free to believe or disbelieve.  The fact that there was no written confirmation of the statements goes to the weight and not admissibility of such evidence and the prosecutor's reference to such evidence in his opening statement does not constitute prosecutorial misconduct.  Because the prosecutorial misconduct claim was without merit, counsel's failure to present this issue on appeal does not constitute ineffective assistance of counsel. *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  Therefore, appellate counsel's failure to raise this claim as an assignment of error was not objectively unreasonable and does not constitute ineffective assistance of appellate counsel.

Petitioner also alleges he had a right to testify in his own defense. (Doc. 1 at 21).  He states, "Petitioner did not testify and he asserts that his non-testimony may have altered the outcome of the case, especially when considering that petitioner has only a minor criminal record." *Id*.  However, petitioner has failed to show he asserted his desire to testify on his own behalf at trial, that he was somehow prevented from testifying by either his defense attorney or the trial court, or what the substance of that testimony would be.  Although a criminal defendant has a constitutional right to testify on his own behalf, *Rock v. Arkansas*, 483 U.S. 44, 49 (1987), the defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand.  When a defendant does not take the stand, the defendant's "assent is presumed." *United States v. Webber*, 208 F.3d 545, 551

26

(6th Cir. 2000). This presumption exists in large part because defense counsel is "'strongly presumed to have rendered adequate assistance' in carrying out the general duty 'to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution.'" *Id.* (quoting *Strickland*, 466 U.S. at 688). As a result, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *Webber*, 208 F.3d at 551. "At base, a defendant must 'alert the trial court' that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *Id.* (internal quotations omitted). If a defendant remains silent, "waiver of the right to testify may be inferred from the defendant's conduct." Id.

In this case, petitioner made no indication to the state trial court that he wished to testify. Nor does he point to specific instances of conduct from which the trial court could have inferred either a disagreement with counsel in this regard or the desire to testify. In addition, petitioner has failed to allege or show any evidence of coercion or that his decision not to testify was involuntary or unknowing. Because petitioner did not alert the trial court of a desire to testify or a disagreement with counsel, waiver of the right to testify may be inferred. Therefore, petitioner's assent in the decision not to testify is presumed, as is the effectiveness of his trial attorney, *see Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000), and appellate counsel's failure to raise this claim as an assignment of error on appeal does not constitute ineffective assistance of appellate counsel.

27

Under the second prong of the *Strickland* test, it is not reasonably likely that the result of petitioner's appeal would have been different if the prosecutorial misconduct and the denial of the right to testify on his own behalf claims asserted by petitioner in his *pro se* brief had been raised as assignments of error by his counsel on direct appeal.  Indeed, it is highly unlikely that the Ohio Court of Appeals would have reversed the trial court's judgment of conviction and sentence on the basis of any of petitioner's claims of error presented in his *pro se* brief. The Court concludes that the representation provided by petitioner's appellate counsel was neither deficient within the meaning of the Sixth Amendment nor prejudicial to petitioner. Accordingly, Ground Four of the petition should be denied.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be DENIED with prejudice.

2.  A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 9/8/2006                              s/Timothy S. Hogan
                                            Timothy S. Hogan
                                            United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DONALD DIEDERICH,                                    Civil Action No. 1:05-cv-017
      Petitioner,

                                                  Spiegel, J.
      vs.                                              Hogan, M.J.

CARL S. ANDERSON, WARDEN,
      Respondent.


## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254.  Any party may object to the Magistrate Judge's Report and Recommendation within TEN (10) DAYS of the filing date of this R&R.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s) Any response by an opposing party to the written objections shall be filed within TEN (10) DAYS after the opposing party has been served with the objections.  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

1:05cv17 Doc.10

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> X ☐ Agent ☐ Addressee <br> B. Received by (*Printed Name*) / C. Date of Delivery |
| 1. Article Addressed to: <br><br> Donald Diederich <br> 418-613 <br> Grafton Corr. Inst. <br> 2500 South Avon Belden Rd. <br> Grafton, OH 44044 | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No <br><br> 3. Service Type <br> ☑ Certified Mail ☐ Express Mail <br> ☐ Registered ☐ Return Receipt for Merchandise <br> ☐ Insured Mail ☐ C.O.D. <br> 4. Restricted Delivery? (*Extra Fee*) ☐ Yes |
| 2. Article Number <br> (*Transfer from service label*) | 7002 0860 0006 5230 5158 |

PS Form 3811, August 2001          Domestic Return Receipt          102595-02-M-0835